United States District Court
Southern District of Texas
**ENTERED**
August 04, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Kayla Schulke, | § | |
| Individually and On Behalf of | § | |
| Others Similarly Situated | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-20-2571 |
| | § | |
| Isbaz Corp., Damon Cobbs,[1] | § | |
| and Babatunde Ibrahim, | § | |
| *Defendants.* | § | |

## ORDER GRANTING SUMMARY JUDGMENT

This is a collective action under the Fair Labor Standards Act (FLSA). The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of judgment. ECF No. 55. Pending before the court is Plaintiffs' Motion for Summary Judgment. ECF No. 78. The motion is **GRANTED**.

### 1. Background and Procedural Posture

Plaintiffs filed their summary judgment motion on April 28, 2023. ECF No. 78. Defendants' response was due May 19, 2023. Before the due date, the court held a hearing on Plaintiffs' Motion to Compel Mediation, ECF No. 79. *See* May 5, 2023 Min. Entry. At the hearing, in addition to requiring the parties to attend mediation, the court set July 14, 2023, as the deadline for Defendants to respond to the motion for summary

---

[1] Damon Cobbs has not been served and is not subject to this Order.

judgment. ECF No. 82.[2] The case was set to be mediated on May 31, 2023, before a magistrate judge. ECF No. 84. About the mediation, the docket sheet indicates that "Counsel for both sides appeared. Clients either did not appear or appeared and were not prepared to mediate. Settlement Conference Cancelled." *See* May 31, 2023 Min. Entry. Plaintiff moved for an extension of time to mediate. ECF No. 87. The court denied the motion in an order on July 1, 2023, stating that "The parties are free to mediate on their own but the reference to [the magistrate judge] is WITHDRAWN. All deadlines, including those set forth in the May 3, 2023 Scheduling Order, ECF No. 82, remain in effect." ECF No. 88. Thus, Defendants' deadline to respond to the motion for summary judgment remained July 14, 2023. No response has been filed, and no extension of time to file one has been requested. *See* Docket R. Defendant is represented by counsel who is receiving automated notices by email through the court's ECF system. *See id.*

In the Southern District of Texas, a failure to timely respond to a motion is taken as a representation of no opposition. S.D. Tex. L.R. 7.4. However, a "motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). Instead, the court may accept the unopposed facts set forth in the summary judgment motion as undisputed. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (affirming the district court's acceptance

---

[2] The May 3, 2023 hearing is not transcribed but the undersigned listened recently to the recording of the hearing. The undersigned specifically stated during the hearing that he had read the motion for summary judgment and announced on the record dates for both a response and reply. Those dates are set forth in the May 3, 2023 Scheduling Order. ECF No. 82. There can be no question that defense counsel is aware of the motion and the deadline to respond.

of the facts in support of the defendant's summary judgment motion as undisputed, where the plaintiff made no opposition to the motion); *Smith v. AZZ Inc.*, No. 20-cv-375-P, 2021 WL 1102095, at \*1–3 (N.D. Tex. March 23, 2021) (citing *Eversley*, 843 F.2d at 174) (taking as true the facts set forth in the moving party's motion for summary judgment). Accordingly, these undisputed facts are taken from Plaintiffs' Motion for Summary Judgment. ECF No. 78.

Plaintiffs are Kayla Schulke, McKenzie Smith, Gabrielle Alderete, Linda Scott, Brittany Taylor, Arianana Ina, T'Chaiyenne Deloney-Winded, and Shanece Kelsey. They worked as exotic dancers at Defendants' adult entertainment club in Houston, Texas—Primetime G5 (Primetime). Plaintiffs worked at Primetime from January 2018 (at the earliest) through October 2022 (at the latest).

Defendant Ibrahim owns and manages Primetime. He manages the finances as well as the club's operations. His pay came out of the club's profits, if any. Ibrahim hired managers to do the actual hiring of dancers as well as to market and promote the club. Defendants classified Plaintiffs as "independent contractors" rather than as employees. Ibrahim and his managers decided to classify the dancers as independent contractors when the club opened. Defendants cannot identify any source that they consulted about that decision. According to Ibrahim, the classification decision was made because that was the practice in Houston.

Defendants did not pay Plaintiffs any wages at all but, instead, allowed Plaintiffs to keep a portion of their tips. Primetime took a portion of Plaintiffs' tips and required Plaintiffs to share tips with non-service employees, including managers, who did not customarily receive tips. Defendant also required Plaintiffs to pay "house fees" to the club's

employees. These fees were to be paid upfront unless otherwise approved by Primetime's manager. The house fee started at approximately $50 per shift and increased every hour and on weekends. According to Ibrahim, the "house fee" consists of four separate mandatory minimum fees that dancers had to pay: $20 to the DJ; $10 to the sweepers; $10 to the "house mom;" and $10 to the manager. The fees were imposed regardless of whether the dancers made any money that day. The fees sometimes resulted in negative earnings because the tips were less than the fees.

Primetime does not have legal or human resources departments. Ibrahim oversees payroll and the managers oversee dispute resolution between employees and customers. One of the managers that Ibrahim had hired came up with the fee structure. That same manager controls whether a dancer could work on a given night. One of the managers oversees Primetime's compliance with ordinances and laws, including wage and hour compliance.

To work as a dancer at Primetime, a prospective dancer fills out an application, speaks to a manager, and undergoes an audition. Hired dancers received a packet of information that included Primetime's rules and regulations. Defendants did not identify any other requirements such as experience, training, or other prerequisites to work at Primetime.

Defendants enforced strict rules on the dancers during work hours. The managers disciplined the dancers in the event of any rule violation. Plaintiffs had to stay at the club for the entirety of their shifts. They were required to sign in at the beginning of each shift. The shift began only after Plaintiffs put on their work outfits. In terms of outfits, Defendants controlled what the dancers could wear. Once checked in, the dancers

were placed on the "dance list" and were not allowed to change their rotation on the dance list absent approval from Primetime's manager, the absence of which resulted in a $20 fine. Dancers were required to continue dancing on stage until relieved by another dancer.

Primetime placed other specific restrictions on the dancers while at work and otherwise. Dancers were not allowed to promote or advertise for other clubs while working for Primetime. Dancers' movement about the club was restricted. For example, dancers were not permitted to enter certain sections of the club at certain times, depending, for example, on the number of dancers already in that area. Dancers were required to seek a manager to resolve any conflicts with customers. Dancers were obligated to report intoxicated customers to management. The dancers' song selection was subject to approval by the DJ. Dancers were forbidden from bringing significant others and family to the club.

Defendants also set Plaintiffs' work schedules. Defendants have discarded all evidence of Plaintiffs' work schedules and did so, in part, even after this lawsuit was filed and discovery was requested. Defendants have thus destroyed the evidence that would show the precise days and hours Plaintiffs worked during the relevant period.

Plaintiffs' only investment in Primetime, aside from their time and energy, was the cost for costumes, attire, and makeup. According to Defendants, "All the exotic dancers need to do is show up, bring [their] own inexpensive clothing items, and dance." Defendants were responsible for financing everything else—rent for the club; advertising, marketing, and promotional efforts; the club's physical infrastructure, such as a dancer pole, seats, and tables; other employees such as waitstaff,

bartenders, managers, and bouncers; and all the other things a business needs to run, such as phones, computers, and a website. Defendants spent tens of thousands of dollars per year to run Primetime.

Plaintiffs' ability to earn more money was dependent on the number of customers, the amount of money the customers decided to spend, and the number of hours that the club stayed open. Plaintiffs had no control over those factors.

### 2. Summary Judgment Standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant must "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts"

showing a genuine issue for trial. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (quoting Celotex Corp., 477 U.S. at 324).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Lincoln Gen. Ins. Co.*, 401 F.3d at 350. "[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence[]'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). The nonmovant must "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009) (quoting *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004)).

### 3. Analysis

#### a. The Plaintiffs Were Not Independent Contractors

Plaintiffs have cited a litany of cases for the proposition that "[t]he overwhelming majority of courts in the Fifth Circuit and around the country find that exotic dancers are employees under the FLSA." ECF No. 78 at 24. In evaluating whether a person is an employee covered by the FLSA versus an independent contractor excluded from the FLSA, courts analyze five non-exhaustive factors including:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). Courts in the Fifth Circuit also generally consider a sixth factor used in other circuits: the extent to which the plaintiff's work is "an integral part" of the alleged employer's business. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020). No single factor is determinative; the court must look at the totality of the circumstances. *Parrish*, 917 F.3d at 380 (quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987)).

Here, Plaintiffs had little control over their day-to-day activities. They invested nothing in the business and very little in the costumes and makeup required for the job. Primetime had almost complete control over the dancers' ability to earn money. The dancers were hired with no expectation that they would be working for any other club. No special training was required before hire. The dancers' work was integral to the existence of the club. Based on a totality of the circumstances, the court concludes that Plaintiffs were employees subject to the minimum wage requirements of the FLSA. They were improperly classified as independent contractors.

### b. Defendants Violated the FLSA's Minimum Wage Requirements

The FLSA requires covered employers to pay employees a general minimum hourly wage of at least $7.25. 29 U.S.C. § 206(a). An exception to that requirement applies to customarily tipped employees, whom an employer may pay a minimum hourly wage that is less than $7.25 but at least $2.13 on the condition that the employee's tips amount to enough to match or exceed the general minimum hourly wage. 29 U.S.C.

§ 203(m)(2); 29 C.F.R. § 531.50; *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015). Because, among other things, Defendants did not permit Plaintiffs to keep all their tips, Defendants are not entitled to the tip credit. *Black v. DMNO, LLC*, No. 16-cv-2708, 2018 WL 2306939, at *3 (E.D. La. May 21, 2018). Wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally, or "free and clear." 29 C.F.R. § 531.35.

Here, Defendants did not pay Plaintiffs any wage at all—not even the $2.13 per hour that is due a tipped employee. And the zero wage they earned was not "free and clear" because their wages were subject to fees, fines, and provision of their own costumes and makeup. Thus, Defendants are in violation of the FLSA. Plaintiffs are due minimum wage of $7.25 per hour worked and reimbursement of any amounts that Plaintiffs were required to pay as fees or otherwise. Plaintiffs are also owed the tips that they were required to share with Defendants' employees. *See Johnson v. N. Tex. Dancers*, No. 7:20-cv-00116-O, 2021 WL 2077649, at *6 (N.D. Tex. May 24, 2021) (including house fees in the calculation of liquidated damages).

### c. *Defendant's FLSA Violation was Willful*

An FLSA claim is ordinarily subject to a two-year limitations period, but if Plaintiffs can demonstrate the violation was willful, then the limitations period is extended to three years. 29 U.S.C. § 255(a); *see also Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). Under the FLSA, the employee has the burden of demonstrating willfulness for the three-year limitations period to apply. *Mohammadi*,

605 F. App'x at 332. An FLSA violation is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Reckless disregard means the "failure to make adequate inquiry into whether conduct is in compliance" with the FLSA. 5 C.F.R. § 551.104.

Defendants destroyed the only available evidence showing the days and hours that Plaintiffs worked at Primetime. They did so during the pendency of this lawsuit. It is undisputed that Defendants knew that there were wage and hour laws and rules. Defendants did nothing to determine whether their classification of the dancers as independent contractors was lawful. Rather, Defendants enacted this classification scheme simply because "everyone else was doing it" in Houston. As such, Defendants admit they failed to conduct an inquiry into whether their conduct was compliant with the FLSA. This is, by definition, reckless disregard of the requirements of the FLSA. *See* 5 C.F.R. § 551.104 (defining "reckless disregard of the requirements of the Act" as "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]"). Defendant's violation was willful. Damages shall be calculated on a three-year lookback period.

### d. *Damages Calculation*

As an initial matter, under the FLSA, it is the employer's burden "to keep proper records of wages, hours, and other conditions and practices of employment," because they are in the best position to do so. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a); *see also* 29 U.S.C. § 211(c) (codifying the employer's record-keeping duty). "[W]hen employers violate

their statutory duty to keep proper records, . . . employees thereby have no way to establish the time spent doing uncompensated work[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (citing *Mt. Clemens*, 328 U.S. at 687). When an employer has failed to keep or maintain proper records, the Court employs a burden-shifting framework that allows employees without access to accurate timekeeping records to rely on their own testimony to meet their burden of proof. *Mt. Clemens*, 328 U.S. at 687-88.

Because Defendants failed to keep any records (and, in fact, destroyed records) that might be used to show the precise number of days or hours worked by the Plaintiffs, the court will rely on the Plaintiffs' testimony as proof of the days and hours they worked at Primetime.

According to Plaintiffs, they worked the following average number of hours and days for Defendants:

- Plaintiff Schulke: four (4) shifts per week, six-to-eight (6-to-8) hours per shift, for an average of 20-to-30 hours per week during the relevant period;

- Plaintiff Smith: five-to-six (5-to-6) days per week, seven-to-eight (7-to-8) hours per day, for an average of 41.25 hours per week across 101 weeks;

- Plaintiff Alderete: four-to-five (4-to-5) days per week, five-to-seven (5-to-7) hours per day, for an average of 27 hours per week across 122 weeks;

- Plaintiff Scott: four (4) days per week, eight (8) hours per day, for an average of 32 hours per week across 81 weeks;

- Plaintiff Taylor: four-to-five (4-to-5) days per week, six-to-seven (6-to-7) hours per day, for an average of 29.25 hours per week across 22 weeks;

- Plaintiff Ina: total of 15 hours across two (2) days;
- Plaintiff Deloney-Winded: three (3) days per week, five (5) hours per day, for an average of 15 hours per week across 61 weeks; and
- Plaintiff Kelsey: five (5) days per week, seven-to-eight (7-to-8) hours per day, for an average of 37.5 hours per week across 133 weeks.

Plaintiffs further represent that they paid the following average amounts to Defendants to work at Primetime:

| Name | House Fees / Week | Tip Outs / Week | Fines / Week |
|---|---|---|---|
| Schulke | $200.00 | $400.00 | -- |
| Smith | $1,375.00 | $825.00 | -- |
| Alderete | $225.00 | $348.75 | $50.00 |
| Scott | $200.00 | $480.00 | $400.00 |
| Taylor | $405.00 | $675.00 | $50.00 |
| Ina | $150.00 in total | $120.00 in total | -- |
| Deloney-Winded | $150.00 | $330.00 | -- |
| Kelsey | $337.50 | $375.00 | $50.00 total. |

Plaintiffs thus calculate that they are owed the following amounts under a two-year damage model (not including liquidated damages):

| Name | Weeks | Wages Owed | House Fees Owed | Tip Outs Owed | Fines Owed | 2-Year Total |
|---|---|---|---|---|---|---|
| Schulke | 42 | $8,526.00[3] | $8,400.00 | $16,800.00 | -- | $33,726.00 |
| Smith | 61 | $18,519.22 | $83,875.00 | $50,325.00 | -- | $152,442.22 |
| Alderete | 65 | $12,723.75 | $14,625.00 | $22,668.75 | $3,250.00 | $53,267.50 |
| Scott | 81 | $18,792.00 | $16,200.00 | $38,880.00 | $32,400.00 | $106,272.00 |
| Taylor | 22 | $4,665.38 | $8,910.00 | $14,850.00 | $1,100.00 | $29,525.38 |
| Ina | 2 days | $108.75 | $150.00 | $120.00 | -- | $378.75 |
| Deloney-Winded | 60 | $6,525.00 | $9,000.00 | $19,800.00 | -- | $35,325.00 |
| Kelsey | 102 | $27,731.25 | $34,425.00 | $38,250.00 | $50.00 | $100,456.25 |

Plaintiffs calculate these amounts for the third year,

| Name | Weeks in 3rd Year | Wages Owed | House Fees Owed | Tip Outs Owed | Fines Owed | 3rd Year Total |
|---|---|---|---|---|---|---|
| Schulke | 22 | $4,466.00 | $4,400.00 | $8,800.00 | -- | $17,666.00 |
| Smith[4] | 40 | $12,143.75 | $55,000.00 | $33,000.00 | -- | $100,143.75 |
| Alderete | 48 | $9,396.00 | $10,800.00 | $16,740.00 | $2,400.00 | $39,336.00 |
| Kelsey | 31 | $8,428.13 | $10,462.50 | $11,625.00 | -- | $30,515.63 |

[3] Schulke has used an average of twenty-eight hours per week, which the court concludes is reasonable.
[4] The court has made corrections to Plaintiffs' counsel's calculation of Smith's damages.

The total damages for the three-year period for each Plaintiff are:

| Schulke | $51,392 |
|---|---|
| Smith | $252,585.97 |
| Alderete | $92,603.50 |
| Scott | $106,272 |
| Taylor | $29,525.38 |
| Ina | $378.75 |
| Deloney-Winded | $35,325.00 |
| Kelsey | $130,971.88 |

### e. Liquidated Damages

The FLSA allows for an award of liquidated damages equal to the amount of unpaid wages. 29 U.S.C. § 216(b). However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act," the court may decline "in its sound discretion" to award liquidated damages. 29 U.S.C. § 260. Even if a defendant shows subjective good faith and objective reasonableness for failing to comply with the FLSA, the district court may nevertheless exercise its discretion to award liquidated damages. *Solis v. Hooglands Nursery, L.L.C.*, 372 F. App'x 528, 530 (5th Cir. 2010).

Defendants have failed do demonstrate that they acted in good faith or had any reason to believe that their pay scheme complied with the law. Liquidated damages will be awarded.

### f. Attorney's Fees and Costs

Plaintiffs may file a post-judgment motion for attorney's fees and costs under Rule 54(d).

### 4. *Conclusion*

Because there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law, the court **GRANTS** Plaintiff's summary judgment motion and awards actual and liquidated damages:

| Plaintiff | Actual Damages | Liquidated Damages |
|---|---|---|
| Schulke | $51,392 | $51,392 |
| Smith | $252,585.97 | $252,585.97 |
| Alderete | $92,603.50 | $92,603.50 |
| Scott | $106,272 | $106,272 |
| Taylor | $29,525.38 | $29,525.38 |
| Ina | $378.75 | $378.75 |
| Deloney-Winded | $35,325.00 | $35,325.00 |
| Kelsey | $130,971.88 | $130,971.88 |

A separate final judgment will be entered.

Signed at Houston, Texas on August 4, 2023.

Peter Bray
United States Magistrate Judge